**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____14-cv-3063_____

STEPHEN DIERKS, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

DEX MEDIA, INC., a Delaware corporation,

      Defendant.

---

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

---

      Plaintiff Stephen Dierks ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Dex Media, Inc. ("Dex") to stop its practice of making unsolicited telephone calls to consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

      1.    Defendant purports to be "a provider of social, local and mobile marketing solutions for local businesses. [Dex] provides marketing solutions that include Websites, print, mobile, search engine and social media solutions." Among Defendant's services are online business directories published under the names SuperPages.com and DexPages.com.

      2.    In order to populate its online directories, Defendant collects and purchases

contact information from third-party data brokers. Defendant then categorizes and labels the collected contact information by specific industries, such as florists or beauty salons.

3.     Thereafter, Defendant places marketing calls to the collected telephone numbers in an effort to sell "upgraded" (*i.e.*, paid) listings within the directories (*e.g.*, enhanced or priority listings). As such, even though a person or company never elected to have their contact information placed on Defendant's websites, they still receive unsolicited marketing calls. Worse, Defendant has made (and continues to make) multiple unsolicited marketing calls to individuals who have registered their phone numbers on the National Do Not Call Registry.

4.     By placing these marketing calls to numbers listed on the National Do Not Call Registry list and without the recipient's prior express consent, Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

5.     The TCPA was enacted to protect individuals from unsolicited and repeated commercial calls exactly like those alleged in this case. Defendant made these unsolicited calls despite the fact that neither Plaintiff nor the other members of the putative Class has ever provided express consent to receive such calls, and despite the fact that Plaintiff's and the Class's numbers are registered with the National Do Not Call Registry for the express purpose of avoiding unwanted telemarketing calls.

6.     By making the unsolicited calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the putative Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited telephone calls. The unsolicited calls at issue also invaded Plaintiff and the putative Class's privacy.

7.     In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit

and now seeks an injunction requiring Defendant to cease all unsolicited calling activities and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

8.      Plaintiff Stephen Dierks is a natural person and resident of the State of Colorado.

9.      Defendant Dex Media, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at 2200 West Airfield Drive, DFW Airport, Texas 75261. Defendant Dex Media conducts business throughout this District, the State of Colorado, and the United States.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA, which is a federal statute. The Court has personal jurisdiction over Defendant because Defendant conducts significant business transactions in this District, and solicits business in this District.

11.      Venue is proper in this District under 28 U.S.C. § 1391 because Defendant conducts significant business transactions in this District, solicits business in this District, because a substantial part of the events giving rise to this action occurred in this District.

## COMMON FACTUAL ALLEGATIONS

12.      Defendant Dex Media operates various online business directory websites, including Superpages.com and Dexpages.com. Defendant claims, for example, that its SuperPages site is "the local expert, and a top online resource for finding information and insights on businesses and retailers. Every month we help millions of consumers find valuable

local business information from driving directions and hours of operation to Web links and customer reviews."

13.     However, Defendant does not solicit individuals and businesses for their permission to list their information in its online directories. Instead, Defendant collects contact information from several data aggregation and collection companies, such as Acxiom and Infogroup.

14.     As such, Defendant publishes the information without the listed individuals or companies verifying the accuracy of the information.

15.     Nevertheless, once Defendant has collected and published the acquired information, it places marketing calls to the phone numbers listed. Defendant makes these calls in an attempt to sell to the recipient upgraded, paid-for directory offers (*e.g.*, enhanced or prioritized business listings).

16.     These marketing calls primarily come from 913 area codes, which covers the Overland Park, Kansas area, which is home to Defendant's $20 million call center.[1] The phone numbers used by Defendant include, but are not limited to, (913) 725-7588, (913) 725-7773, (913) 725-7738, (913) 725-7971, and (913) 725-7784.

17.     Recipients of these marketing phone calls, like Plaintiff and the putative Class, did not request or desire to be called by Defendant, and did not provide any form of consent to receive such calls.

## FACTS SPECIFIC TO PLAINTIFF

18.     Defendant began placing telephone calls to Plaintiff Stephen Dierks's landline

---

[1]     *Dex One confirms plans to hire 350 in Overland Park*, www.bizjournals.com/kansascity/news/2011/03/03/dex-one-confirms-plans-to-hire-350-in.html (last visited on November 13, 2014).

telephone number in or around August 2014. The calls came from the numbers (913) 725-7784

and (913) 725-7971. The caller ID for each call stated "Dex Media."

20.    Plaintiff registered his landline telephone number with the National Do Not Call

Registry on January 20, 2011 for the express purpose of preventing unwanted telemarketing

calls.

20.    As Plaintiff did not recognize the numbers the calls were coming from, he did not

answer them. However, on at least one occasion, Defendant's telemarketer left a message on

Plaintiff's voicemail. The message indicated that it was Defendant Dex Media calling and that

the telemarketer wanted to speak with Plaintiff about opportunities related to his "listings."

21.    Plaintiff had no knowledge of any of the listings mentioned by the telemarketer,

and he had not created any listing on SuperPages or DexPages.

22.    Upon investigation, Plaintiff viewed that Defendant had published his full name

and residential landline number (as well as his city and state) on its business directory websites

under the category "Psychologists."

23.    Plaintiff is not, and never has been, a psychologist. Plaintiff's wife, on the other

hand, is a licensed psychologist but does not currently practice and has not for several years.

Nevertheless, neither Plaintiff nor his wife has ever used their residential landline telephone

number for any purpose related to a psychologist practice. Likewise, neither Plaintiff nor his wife

ever requested or desired that anything related to any psychologist practice be placed on

Defendant's business websites.

24.    As such, not only did Defendant place calls to Plaintiff without any form of

consent, but it was calling about (and attempting to profit from) a listing that Plaintiff did not

create, that was inaccurate, and that misrepresented Plaintiff's profession.

25.     Defendant is and was aware that the unsolicited phone calls at issue were (and are continuing to be) made, and that the calls were being made to consumers and entities that had not consented to receive them.

## CLASS ALLEGATIONS

26.     Plaintiff Stephen Dierks brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and a class of similarly situated individuals and entities defined as follows (the "Class"):

> All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) to whom Defendant Dex Media, Inc. initiated more than one telephone call promoting Defendant's products or services; (3) within a 12-month period; and (4) for whom Defendant has no current record of consent to place such calls to him or her.

The following persons are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors, (3) persons who properly execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, (5) the legal representatives, successors, or assigns of any such excluded persons, and (6) Plaintiff's counsel and Defendant's counsel.

27.     **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made unsolicited telephone calls to thousands of consumers and entities that fall

into the definition of the Class. Members of the Class can be identified through Defendant's records.

28.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common and predominant questions for the Class include, but are not necessarily limited to, the following:

(a)     Whether Defendant's conduct constitutes a violation of the TCPA;

(b)     Whether Defendant and/or its agents systematically made telephone calls to members of the Class who Defendant and/or its agents did not have a current record of consent to make such telephone calls;

(c)     Whether Defendant and/or its agents systematically made telephone calls to members of the Class whose telephone numbers were registered with the National Do Not Call Registry; and

(d)     Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

29.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct and making of unsolicited telephone calls.

30.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

31.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

32.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would

increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

33.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

34.     47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

35.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "No person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

36.     47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

37.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given

the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

38.    Defendant violated § 64.1200 (c) by initiating, or causing to be initiated, telephone solicitations to wireless and residential telephone subscribers such as Plaintiff and the Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These individuals requested to not receive calls from Defendant or its agents, as set forth in § 64.1200 (d)(3).

39.    Defendant and/or its agents made more than one unsolicited telephone call to Plaintiff and members of the Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Class never provided any form of consent to receive telephone calls from Defendant (or its agents) and/or Defendant (and/or its agents) does not have a current record of consent to place telemarketing calls to them.

40.    Defendant violated § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

41.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Class received more than one telephone calls in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Class suffered actual damages and, under section 47 U.S.C. §

227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of § 64.1200.

42.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Stephen Dierks, individually and on behalf of the Class, prays for the following relief:

A.    An order certifying the Class as defined above, appointing Plaintiff Stephen Dierks as the representative of the Class, and appointing his counsel as Class Counsel;

B.    An award of actual and statutory damages;

C.    An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Class;

D.    An award of reasonable attorneys' fees and costs; and

E.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**STEPHEN DIERKS**, individually and on behalf of all others similarly situated,

Dated: November 13, 2014

By: _/s/ Steven L. Woodrow_
        One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@edelson.com
Megan Lindsey
mlindsey@edelson.com
EDELSON PC
999 West 18th Street, Suite 3000
Denver, Colorado 80202
Tel: 303.357.4878
Fax: 303.446.9111

Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Eve Lynn Rapp
erapp@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan L. Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, Florida 33131
Tel: 877.333.9427
Fax: 888.498.8946