**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO. 14-CV-03063-RM-BNB

STEPHEN DIERKS, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

DEX MEDIA, INC., a Delaware corporation,

      Defendant.

---

**MOTION TO DISMISS AND/OR STRIKE PURSUANT TO FRCP 12(B)(6) AND 12(F)**

---

MUNGER, TOLLES & OLSON LLP
  James C. Rutten
  Varun Behl
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
(213) 683-9100; (213) 687-3702 (fax)
james.rutten@mto.com
varun.behl@mto.com

GARLIN DRISOLL LLC
  David Driscoll
  Joel Palmer
245 Century Circle, Suite 101
Louisville, Colorado  80027
(303) 926-4222; (720) 550-5816 (fax)
ddriscoll@garlindriscoll.com
jpalmer@garlindriscoll.com

*Attorneys for Defendant Dex Media, Inc.*

## TABLE OF CONTENTS

MOTION..........................................................................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES .................................................3

    I.      INTRODUCTION ...............................................................................3

    II.     BACKGROUND .................................................................................4

          A.     Overview Of The Telephone Consumer Protection Act..............................4

          B.     Allegations Of The Complaint....................................................6

    III.    ANALYSIS.........................................................................................7

          A.     Plaintiff's Class Action Allegations Should Be Dismissed Or Stricken Because He Does Not Allege *Facts* Plausibly Suggesting That This Case Could Satisfy FRCP 23....................................................................7

          B.     Plaintiff's Individual Claims Should Be Dismissed Or Stricken..............10

               1.     Plaintiff Does Not Allege *Facts* Plausibly Showing a Violation of Subsection (d) of § 64.1200........................................10

               2.     Plaintiff Does Not Allege *Facts* Plausibly Showing a Violation of Subsection (e) of § 64.1200......................................12

               3.     Plaintiff Does Not Allege Two Actionable Calls as Required To State a Claim Under *any* Pertinent Subsection of § 64.1200 .....................................................................13

    IV.    CONCLUSION..................................................................................20

## MOTION

Defendant Dex Media, Inc. ("Dex Media") respectfully moves pursuant to Federal Rule of Civil Procedure 12(b)(6) and (f) to dismiss and/or strike Plaintiff's class action allegations and his individual claims in their entirety and with prejudice.

Dex Media moves to dismiss Plaintiff's class action allegations on the grounds that he does not allege facts plausibly suggesting (i) that the "numerosity," "commonality," "typicality," and "adequacy of representation" requirements of Federal Rule of Civil Procedure 23(a) are met; (ii) that the "generally applicable action" requirement of Rule 23(b)(2) is met; or (iii) that the "predominance" requirement of Rule 23(b)(3) is met.

Dex Media moves to dismiss Plaintiff's individual claim under subsection (d) of 47 C.F.R. § 64.1200 on the grounds that he does not allege facts plausibly suggesting (i) that Dex Media failed to implement or maintain the procedures specified therein; (ii) that he asked to be placed on any Dex Media internal do-not-call list; or (iii) standing. Dex Media moves to dismiss Plaintiff's individual claim under subsection (e) of § 64.1200 on the grounds that he does not allege that Dex Media called his cell phone. Dex Media additionally moves to dismiss Plaintiff's claims under subsection (c) of § 64.1200 (as well as subsections (d) and (e)), on the grounds that Plaintiff does not allege two actionable telephone solicitations, as required by the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5).

This motion is brought following the conference of counsel required by this Court's Civil Practice Standards § IV.M.2.a, which conference took place via telephone on December 18, 2014.

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Dex Media, Inc. ("Dex Media") is the nation's premier publisher of Yellow Pages print and online directory listings. Its clients are the businesses that advertise in its publications, not individual consumers. Accordingly, when Dex Media telephones potential or existing clients to market new or upgraded advertising to them, it necessarily calls businesses, not households.

Plaintiff alleges that a mistake was made in his case. He alleges that Dex Media twice called his home to try to sell him advertising in the mistaken belief that it was calling a psychologist's office. He admits that he did not answer either call, and that, in one instance, he was not even put to the burden of listening to a message on his answering machine because no message was left. He could have ignored these calls, or he could have informed Dex Media that he was not running a psychology practice. Instead, he filed this lawsuit under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (the "TCPA"), which prohibits, *inter alia*, certain telemarketing calls to residential telephone subscribers – but does not prohibit calls to business subscribers. Plaintiff seeks damages for the "harm" and "aggravation" he claims to have suffered, and, of course, to represent a *nationwide class* of others he speculates "[o]n information and belief" might be similarly situated. (Compl. (Dkt. #1) at ¶¶ 6, 27.)[1] Both Plaintiff's class action allegations, and his individual claims, fail and should be dismissed.

His class action allegations fail because he does not plead facts plausibly supporting his conclusory hypothesis that Dex Media has a "uniform" practice of telemarketing to households

---

[1] Throughout this brief, any emphasis in quotations is added, and any internal quotation marks, citations, footnotes, brackets, and ellipses are omitted unless otherwise indicated.

3

notwithstanding that it has no reason to do so because its clients are *businesses*. (*Id.* ¶ 31.) Indeed, he does not plead facts suggesting that Dex Media *ever* called *any* residence other than his own. Instead, he just recites FRCP 23's requirements and pronounces them satisfied, thus typifying "the practice of many lawyers almost Pavlovian in its character of inserting class action allegations in their complaint" without supporting facts. *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1311 (4th Cir. 1978). Because he offers "nothing more than a formulaic recitation of the elements necessary for class certification," "[d]ismissal of the class action allegations is . . . warranted." *Cox v. Allstate Ins. Co.*, 2009 WL 2591673, at *3-4 (W.D. Okla. Aug. 19, 2009).

Plaintiff's individual claims under the TCPA likewise should be dismissed. He asserts violations of provisions prohibiting calls to residential telephone subscribers on a company's internal do-not-call list, but does not allege that he was on, or ever asked to be on, a Dex Media do-not-call list. Similarly, he asserts violations of provisions prohibiting calls to wireless subscribers, but does not allege that Dex Media called his wireless phone. And he likewise has not stated a claim for violations of provisions prohibiting calls to residential subscribers on the federal do-not-call registry: The TCPA requires a plaintiff to have received *two* prohibited calls before a cause of action will lie, but one of the calls at issue here went unanswered with no message being left, which renders it nonactionable. Plaintiff's Complaint should be dismissed, and because many of its defects are incurable, dismissal should be with prejudice.

## II.  BACKGROUND

### A.    Overview Of The Telephone Consumer Protection Act.

The TCPA was enacted to regulate "unrestricted telemarketing" to the "homes" of "residential [telephone] subscribers." *FTC v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 857

(10th Cir. 2003).  It addresses many topics (*e.g.*, "auto-dialing" and "junk faxes"), and provides

for regulatory enforcement by public officials and private enforcement by individuals.  *See* 47

U.S.C. § 227(b)(2)(3), (c)(5), (g)(1), (g)(3).  Of relevance here, the statute authorizes "[a] person

who has received *more than one* telephone call within any 12-month period by . . . the same

entity in violation of the regulations prescribed under this subsection [to] . . . bring . . . an action

to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for

each such violation."  *Id.* § 227(c)(5).  The statute makes clear, however, that it is not meant to

create liability for simple mistakes; it provides that there can be no liability if the defendant

maintained "reasonable practices and procedures to effectively prevent telephone solicitations in

violation of the [implementing] regulations."  *Id.* § 227(c)(5)(C).

   The Federal Communications Commission's ("FCC") implementing regulation, 47

C.F.R. § 64.1200, contains three provisions put in issue by the Complaint.  *First*, subsection (d)

of the regulation, promulgated in 1992, addresses the subject of *company-specific, internal* do-

not-call lists.  It provides that "[n]o person or entity shall initiate any call for telemarketing

purposes to a residential telephone subscriber unless such person or entity has instituted [certain]

procedures for maintaining [and complying with] a list of persons who request not to receive

telemarketing calls by or on behalf of that person or entity."  *Id.* § 64.1200(d).

   *Second*, subsection (c) of the regulation, promulgated in 2003, augments this provision by

providing that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential

telephone subscriber who has registered his or her telephone number on the *national* do-not-call

registry."  *Id.* § 64.1200(c).  Subsection (c), like the statute, provides that there shall be no

liability if a "violation is the result of error" and the defendant has adopted certain procedures "as part of its routine business practice" designed to prevent such errors.  *Id.* § 64.1200(c)(2)(i).

*Third*, subsection (e) provides that "[t]he rules set forth in paragraph[s] (c) and (d) . . . are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the [FCC's] Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'"  *Id.* § 64.1200(e).  This report and order ("FCC 03-153") specifies that telemarketing calls to cell phone users on a do-not-call list remain permissible unless the cell numbers are used as residential numbers, and that "determining whether any particular wireless subscriber is a 'residential subscriber' may be . . . fact-intensive."  FCC 03-153 at ¶ 36, *available at* 2003 WL 21517853, at *14.

The TCPA and its implementing regulation also set forth numerous other individualized, fact-intensive exceptions to liability.  They provide, for example, that calls to residential subscribers remain permissible if a company has an "established business relationship" with the person called or if it obtained "the subscriber's prior express invitation or permission" to be called, 47 C.F.R. § 64.1200(c)(2)(ii), (f)(14)(i), (f)(14)(ii), or if "[t]he telemarketer making the call has a personal relationship with the recipient of the call," *id.* § 64.1200(c)(2)(iii).

**B.**     **Allegations Of The Complaint.**

Plaintiff's Complaint tacitly concedes that Dex Media has no reason to call households in violation of the TCPA.  He acknowledges that Dex Media provides "marketing solutions for local *businesses*" through Yellow Pages and online "*business* directories."  (Compl. ¶¶ 1, 12.) He further alleges that it provides free directory listings to some businesses prefatory to

marketing "enhanced or prioritized business listings" to them (*id.* ¶ 15), and that Dex Media did

so in his case, listing him "under the category 'Psychologists'" based on information he theorizes

was provided by another company (*id.* ¶ 22).  He claims that this categorization was erroneous,

and surmises that the confusion may have arisen from the fact that "[his] wife . . . is a licensed

psychologist."  (*Id.* ¶ 23.)

Plaintiff alleges that Dex Media called his "landline telephone number in or around

August 2014" from two different numbers in an effort to sell him upgraded advertising.  (*Id.*

¶ 18.)  He admits that because he "did not recognize the numbers the calls were coming from, he

did not answer them," and he is unable to identify more than "one occasion" on which the caller

"left a message on [his] voicemail."  (*Id.* ¶ 20.)  Plaintiff, instead of simply telling Dex Media

that it had called him in error, filed this action, seeking to recover for the "harm" and

"aggravation" he supposedly suffered (*id.* ¶ 6), and to represent a nationwide class based on

nothing but "information and belief" that such a class even exists (*id.* ¶ 27).

### III.  ANALYSIS

**A.**   **Plaintiff's Class Action Allegations Should Be Dismissed Or Stricken Because He Does Not Allege *Facts* Plausibly Suggesting That This Case Could Satisfy FRCP 23.**

The law is clear that the bedrock rules of pleading – that the plaintiff must plead *facts*, not

conclusions, and that the facts must state a *plausible* claim, *see Ashcroft v. Iqbal*, 556 U.S. 662,

680-81 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) – apply equally to

substantive and class action allegations.  For example, in *Cox v. Allstate Insurance Co.*, 2009

WL 2591673 (W.D. Okla. Aug. 19, 2009) (Leonard, J.), the court, citing *Iqbal*, dismissed class

action allegations at the pleading stage because "they simply parrot[ted] the language of Rule

23" and thus "amount[ed] to nothing more than a formulaic recitation of the elements necessary

7

for class certification." *Id.* at *3-4.  The court explained: "Plaintiffs need not plead their

evidence in support of class certification, but they must do more than repeat mindlessly the

language of the rule." *Id.* at *4.

Similarly, in *Myart v. Glosson*, 2014 WL 6612008 (W.D. Tex. Nov. 20, 2014), the court

held that "class-action claims can be dismissed pursuant to Rule 12(b)(6) or 12(f) motions if it is

apparent from the pleadings the plaintiff does not properly *state* a class-action claim." *Id.* at *5.

The court, citing *Twombly*, dismissed the allegations because the plaintiff alleged no *facts*

supporting his *ipse dixit* that there were "thousands" of claimants or that "his claims are similar

to claims [others] may have":

> [B]ecause [the plaintiff] does nothing more . . . than state there are "literally
> thousands" of [other] plaintiffs . . . who suffered from "the exact illegal activities"
> committed by [the defendant], he has not stated even minimal facts in the
> pleadings to show [that] absent parties are fairly encompassed in his claims.  He
> does not allege any facts that demonstrate that there are questions of law or fact
> common to the class.  Nor does he plead any facts that demonstrate that his claims
> are similar to claims any class members may have. . . . [The complaint] is purely
> conclusory and does not assert enough *facts* . . . to raise it above the speculative
> level, *Twombly*, 550 U.S. at 555 . . . .

*Id.* at *5-6; *accord Landry v. Peter Pan Bus Lines, Inc.*, 2009 WL 9417053, at *1 (D. Mass. Nov.

20, 2009) ("[T]he complaint . . . does not set forth factual allegations creating a 'plausible'

entitlement to relief *for anyone other than [the plaintiff]*. . . . [The plaintiff] alleges only the legal

conclusion, that employees were not paid overtime duly owed, and legal conclusions are not

entitled to an assumption of truth.").

The same result follows here for the same reasons.  Plaintiff does not allege facts

plausibly suggesting that a class exists *at all*, much less that its notional members are "so

numerous that joinder of [them] is impracticable." Fed. R. Civ. P. 23(a)(1).  He admits that Dex

Media only called his home based on the "unique factual scenario" of mistakenly thinking it was a psychologist's office, *Myart*, 2014 WL 6612008, at *6, and he alleges no *facts* supporting his speculation that Dex Media has made "unsolicited telephone calls to thousands of consumers" (Compl. ¶ 27).  His conclusory allegation in this regard is indistinguishable from the allegations found wanting in *Myart*.  *See also Peak v. Topeka Hous. Auth.*, 78 F.R.D. 78, 83 (D. Kan. 1978) (striking class action allegations at the pleading stage because all the plaintiff alleged was a "bald conclusion that a defendant has violated a statute . . . with regard to [many people]").

Moreover, Plaintiff does not allege *facts* plausibly suggesting that "there are questions of law or fact common to [a] class," that Dex Media has acted in ways that "apply generally" to a hypothetical class of residential consumers, or that any common questions "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(a)(2), (b)(2), (b)(3).  The best he can muster is that "Defendant has acted or refused to act on grounds generally applicable to the Class" and that its "policies . . . affect members of the Class uniformly" (Compl. ¶ 31) – boilerplate that "amount[s] to nothing more than a formulaic recitation of the elements necessary for class certification," *Cox*, 2009 WL 2591673, at *4.

Furthermore, the "complaint contains no allegations relating to whether [Plaintiff] will fairly and adequately protect the interests of the class, [or] whether his claims will be typical of the class."  *Myart*, 2014 WL 6612008, at *6; *see also* Fed. R. Civ. P. 23(a)(3), (a)(4).  Again, the Complaint simply regurgitates the language of Rule 23, which is not enough.  (*See* Compl. ¶¶ 29-30.)  Indeed, the Complaint belies the notion that Plaintiff satisfies the "adequacy" and "typicality" requirements, given that it alleges that Dex Media called his home based on the "unique factual scenario" of a simple mistake.  *Myart*, 2014 WL 6612008, at *5; *see also*

*Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D. 607, 623 (D. Kan. 2008) (Brown, J.) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").

Simply put, Plaintiff's "sparse and conclusory allegations of a class fall far short of the standard necessary to pursue a class action." *Johnson v. Conn.*, 2012 WL 414996, at *2 (D. Conn. Feb. 9, 2012) (granting motion to strike).  His class allegations should be dismissed.

**B.**     **Plaintiff's Individual Claims Should Be Dismissed Or Stricken.**

      **1.**     **Plaintiff Does Not Allege *Facts* Plausibly Showing a Violation of Subsection (d) of § 64.1200.**

Plaintiff's claim under subsection (d) of 47 C.F.R. § 64.1200 should be dismissed for three independently dispositive reasons.  *First*, he does not allege facts plausibly showing that Dex Media failed to "institute[] procedures for maintaining [and complying with] a list of persons who request not to receive telemarketing calls made by or on behalf of" Dex Media.  47 C.F.R. § 64.1200(d).  For Plaintiff to allege a subsection (d) claim, he must allege facts showing that Dex Media's procedures fell short of certain "minimum standards" identified in the regulation, *id.*, including maintenance of a "written policy . . . for maintaining [an internal] do-not-call list, "[t]raining of personnel engaged in telemarketing," and "[r]ecording . . . of do-not-call requests," *id.* § 64.1200(d)(1)-(3).  But Plaintiff does not make *any* allegations of fact in this regard, much less the "specific factual allegations" required by the *Twombly/Iqbal* standard. *Kan. Penn Gaming LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Instead, he simply quotes subsection (d) in its entirety (*see* Compl. ¶ 37), and then parrots its language by saying: "Defendant violated § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Class, without instituting procedures

that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them" (*id.* ¶ 40). Because his "Complaint simply recites the requirements of 47 C.F.R. § 64.1200(d) and conclusorily alleges that they were violated," he has "not . . . stated a claim for any violation of 47 C.F.R. § 64.1200(d)." *Bailey v. Domino's Pizza LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012).

*Second*, Plaintiff does not allege that he asked to be placed on any Dex Media do-not-call list in the first place, but appears to admit that he was a stranger to the Company. (*See* Compl. ¶¶ 22-24.) His claim fails on this basis as well. As one court put it: "The regulation relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls; *Plaintiff does not allege that he made any such affirmative request to Defendant, and therefore it is not clear how the provision was violated*." *Bailey*, 867 F. Supp. 2d at 842.

*Third*, because Plaintiff did not ask to be placed on an internal list, he would have been called *whether or not* Dex Media maintains procedures for maintaining and complying with such a list. He therefore lacks harm from, and standing to complain about, any supposed subsection (d) violation. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (holding that "injury in fact" is an essential requirement of Article III standing); *Luttrell v. Novartis Pharm. Corp.*, 555 Fed. App'x. 710, 710 (9th Cir. 2014) ("Cause in fact is lacking when an injury would have occurred regardless of the defendant's conduct."). And because Plaintiff lacks standing to complain about a purported lack of procedures for complying with an internal do-not-call list with respect to himself, he lacks standing to assert subsection (d) violations on behalf of a class, even indulging the fiction that his class allegations otherwise passed muster. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[E]ven named plaintiffs who

represent a class must allege and show that they personally have been injured, not that injury has

been suffered by other, unidentified members of the class . . . ."); *Donaca v. Dish Network LLC*,

2014 WL 623396, at *5 (D. Colo. Feb. 18, 2014) (Jackson, J.) ("[I]t must be shown that the class

representative is a member of the proposed class.").

 Plaintiff's subsection (d) claim should be dismissed.  Further, because at least the second

and third deficiencies identified above are incurable, dismissal should be with prejudice.

###   2. <u>Plaintiff Does Not Allege *Facts* Plausibly Showing a Violation of Subsection (e) of § 64.1200.</u>

 For Plaintiff to allege a claim under subsection (e) of 47 C.F.R. § 64.1200, he must allege

facts plausibly showing, among other things, that Dex Media called him on his cell phone.  *See*

*Peatrowsky v. Persolve*, 2014 WL 1215061, at *4 (D. Nev. Mar. 24, 2014) ("To state a claim

under the TCPA [for calls made to a cellular phone], a plaintiff must establish that . . . defendant

made a call to plaintiff's cellular telephone . . . .") (discussion in context of 47 U.S.C.

§ 227(b)(1)(A)).  Plaintiff, however, admits that Dex Media called only his "*landline* telephone

number."  (Compl. ¶ 18.)  His subsection (e) claim thus should be dismissed with prejudice.

 Further, not only has he failed to state a subsection (e) claim, but he lacks standing to

complain about purported calls to anyone else's cell phone: "[T]he relevant inquiry is not

whether any member of the putative class might have a claim under the provisions of the TCPA

relating to calls made to cell phone numbers but whether [the plaintiff] himself has such a claim.

If he does not, he does not have standing to sue under the TCPA's cell phone provisions."  *Vigus*

*v. S. Ill. Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 233 (S.D. Ill. 2011); *accord Blum v.*

*Yaretsky*, 457 U.S. 991, 1001 (1982) ("Nor does a plaintiff who has been subject to injurious

conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of

another kind, although similar, to which he has not been subject.").  In any event, Plaintiff does

not allege facts suggesting that Dex Media ever called *anyone's* cell phone.  He merely says that

"Defendant . . . initiat[ed], or caus[ed] to be initiated, telephone solicitations to wireless and

residential telephone subscribers" (Compl. ¶ 38; *see also id.* ¶ 40) – which is merely a

"[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory

statements," *Iqbal*, 556 U.S. at 678.

      Because Plaintiff has not stated and cannot state a subsection (e) claim, his claim should

be dismissed with prejudice.

      **3.**     **Plaintiff Does Not Allege Two Actionable Calls as Required To State a Claim Under *any* Pertinent Subsection of § 64.1200.**

      A call is not actionable under the relevant private cause of action in the TCPA, 47 U.S.C.

§ 227(c)(5), if, as with one of the two calls here, it simply rang through, no one answered, and no

one left a message – otherwise the statute would permit a plaintiff to recover windfall statutory

damages for a call the plaintiff may not even have known about and that could not have caused

any harm.  But the Court need not rely on common sense, adequate though that is, to hold that

Plaintiff has not alleged the requisite *two* actionable calls, for this is clear from the language,

structure, and legislative history of the TCPA, the language and structure of its implementing

regulation, the FCC's pronouncements, and settled principles of statutory construction.

      <u>The Language and Structure of the TCPA</u>: The TCPA creates several causes of action,

but the one at issue here arises only if a "person" has "received" at least two prohibited calls.  47

U.S.C. § 227(c)(5).  The term "person" is unambiguously personal; it necessarily requires the

plaintiff, not merely the plaintiff's phone line, to have been involved.  And the term "received"

necessarily requires the plaintiff to have been involved in the receipt of the call by answering it,

or, arguably, by listening to a message that is left.  Otherwise, a "person," as opposed to a piece of equipment, would not have "received" a call.

Notably, this statutory language differs markedly from that of other provisions of the TCPA – and it is axiomatic that "where [Congress] uses different language in different provisions of the same statute, [courts] must give effect to those differences." *Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010).  *First*, subsection (b) of the statute prohibits using an "automatic telephone dialing system" to make calls *not* to a "person," but to an "emergency telephone *line*," the "*line* of any [hospital] guest room," or the "*number* assigned to a paging service."  47 U.S.C § 227(b)(1)(A).  Subsection (b) imposes these prohibitions because, among other reasons, calls to such *lines* can "compromise health and safety" or otherwise cause harm whether or not anyone answers the phone (*e.g.*, by tying up an emergency phone line).  7 F.C.C. Rec. 2736, 2739, *available at* 1991 WL 695438, at *6 (F.C.C. Apr. 17, 1992) (explaining reasons for these prohibitions).  Subsection (b) goes on to provide that a person associated with such a "line" or "number" can sue for violations of these provisions, *without* any requirement that the "person" actually "receive" the call.  *See* 47 U.S.C. § 227(b)(3) ("A person or entity may . . . bring in an appropriate court . . . . an action based on a violation of this subsection.").  This stands in sharp contrast to the operative language in this case requiring a "person" (not a mere "line" or "number") to have "received" a telemarketing call.

*Second*, another subsection of the statute, subsection (g), provides for enforcement by regulators, and does not require a "person" to have "received" a call before such an action can be brought.  Subsection (g) focuses instead on the *defendant's transmission* of a call: "Whenever the attorney general of a State . . . has reason to believe that any person has *engaged* or is

14

*engaging* in a pattern or practice of telephone *calls or other transmissions* to residents of that

State in violation of this section . . . , the State may bring a civil action . . . ." *Id.* § 227(g)(1).

And this makes sense; whereas a regulatory enforcement action by its nature focuses on the

conduct of the defendant, a private cause of action by its nature focuses on the conduct's effect

on an individual plaintiff – and under the portion of the statute at issue in the present case, the

necessary effect is that the "person" actually "receive[]" at least two calls. *Id.* § 227(c)(5).

In short, if Congress wanted to make actionable a call that simply rings through with no

one answering and no message being left, Congress knew how to do that.  That Congress chose

*not* to do that for purposes of the private cause of action at issue here is dispositive; because "the

statute's language is plain, the sole function of the courts is to enforce it according to its terms."

*Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014).

The TCPA's Legislative History: The TCPA's legislative history underscores that it does

not create liability for unanswered calls if no message is left.  A House report states in the

context of explaining that calls from non-profit organizations are permitted: "To come within the

definition [of a prohibited solicitation], *a caller must encourage a commercial transaction*" – and

obviously a caller cannot "encourage" anything without speaking with someone or leaving a

message.  H.R. Rep. No. 102-317, at 13 (1991), *available at* 1991 WL 245201.  Another House

report emphasizes in the context of auto-dialers that the bill "is not attempting to eliminate every

phone call consumers may find intrusive," but is focused "on the most intrusive of these calls" –

and obviously a call that goes unanswered with no message being left is the *least* intrusive type

of call.  H.R. Rep. No. 101-633, at 7 (1990), *available at* 1990 WL 259268.

The Language and Structure of § 64.1200: The FCC's implementing regulation likewise makes clear that a call is not actionable under 47 U.S.C. § 227(c)(5) if no one answers and no one leaves a message.  As noted, subsection (d) of the regulation provides that "[n]o person or entity shall initiate any call for telemarketing purposes" to "a residential telephone *subscriber*" without procedures for maintaining and complying with an internal do-not-call list, while subsection (c) of the regulation prohibits "initiat[ing] a[] telephone solicitation to . . . . [a] residential telephone *subscriber* who has registered his or her telephone number on the national do-not-call registry."  Thus, the regulation's focus, like the statute's, is on the "subscriber" – *i.e.*, the "person" – as opposed to a "line" or "number."  And the regulation, like the statute, has a very *different* focus in *other* subsections, prohibiting auto-dialed calls not to "subscribers," but to certain "line[s]" and "number[s]."  47 C.F.R. § 64.1200(a)(1).

Further, subsection (d)'s prohibition on calls for "telemarketing purposes" is given meaning by the definition of "telemarketing," which is "the initiation of a telephone call *or message* . . . , which is transmitted to any person."  *Id.* § 64.1200(f)(12).  And subsection (c)'s prohibition on "telephone solicitations" is given meaning by the definition of "telephone solicitation," which is "the initiation of a telephone call *or message* for the purpose of [marketing]."  *Id.* § 64.1200(f)(14).  The phrase "or message" would be superfluous if merely placing an unanswered call *without* leaving a message were actionable, *because one must first place a call before one can leave a message, and the call itself would suffice for liability.  See Rajala v. Gardner*, 709 F.3d 1031, 1038 (10th Cir. 2013) ("[I]t is a cardinal principle of statutory

construction that if it can be prevented, no clause, sentence, or word shall be superfluous.").[2]

Stated differently, the phrase "or message" is mere surplusage *unless* (i) the term "call" in the regulation means a call that the "person" actually answers (in the language of the statute, "receives"); (ii) the term "message" in the regulation means a phone message such as a voice mail;[3] and (iii) a call that is not answered and does not result in a message – which will not typically cause any cognizable harm anyway – is not actionable.[4]

The FCC's Pronouncements in Promulgating § 64.1200: The FCC's statements are consistent with the foregoing. When the FCC announced its rulemaking proceeding for § 64.1200, it "propose[d] to exempt by rule from the prohibitions of the statute commercial calls that do not include the *transmission of an unsolicited advertisement*."  7 F.C.C. Rec. 2736, 2737, *available at* 1991 WL 695438, at *3 (F.C.C. Apr. 17, 1992).  Plainly, a call that simply rings through without a message being left cannot "transmi[t] an unsolicited advertisement."

---

[2] "[R]ules of statutory construction also govern the interpretation of administrative regulations."  *Resnik v. Swartz*, 303 F.3d 147, 152 (2d Cir. 2002) (citing 1A Norman Singer, Statutes and Statutory Construction § 31:6 (6th ed. 2002)).

[3] It is no answer to say that "or message" might connote a text message to a cell phone.  The courts consistently hold that "a text message is a *'call'* within the meaning of the TCPA," *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009), so if the term "message" meant "text message," it still would be redundant with the word "call" and therefore superfluous.

[4] Some courts have concluded that the term "call" includes a mere *attempt* to reach someone by telephone such that it does not matter whether the call was answered, *e.g.*, *Satterfield*, 569 F.3d at 953-54, but this cannot be squared with the fact that this would render the phrase "or message" superfluous because one must always attempt to reach someone before leaving a message – a point these courts do not appear to have considered.  Nor do the prohibitions on "initiat[ing]" a call or message, 47 C.F.R. § 64.1200(c), (d), lead to a different conclusion; this merely means that a company cannot be the one to call someone on a do-not-call list, but that the company remains free to pick up the phone if someone on such a list calls the company.  *Cf.* 47 U.S.C. § 227(b)(1)(B) (making it unlawful to "*initiate* any telephone call to any residential telephone line *using an artificial or prerecorded voice to deliver a message*" – which would not make sense if "initiate" meant merely placing a call *without* speaking to someone or leaving a message); 47 C.F.R. § 64.1200(a)(3) (same).

     <u>The Requirement To Construe Statutes so as To Avoid Constitutional Questions</u>: "It is [a]

settled [rule that courts should] avoid an interpretation of a federal statute that engenders

constitutional issues if a reasonable alternative interpretation poses no constitutional question."

*Gomez v. United States*, 490 U.S. 858, 864 (1989).  The rule requires more than simply avoiding,

when possible, an interpretation of a statute that would *actually* render it unconstitutional; it

requires "interpret[ing] a statute where fairly possible so as to avoid substantial constitutional

*questions*."  *United States v. Brune*, 767 F.3d 1009, 1024 (10th Cir. 2014).  "[The rule] is a tool

for choosing between competing plausible interpretations of a statutory text, resting on the

reasonable presumption that Congress did not intend the alternative which raises serious

constitutional doubt."  *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

     Here, it is necessary to construe the TCPA not to create a private right of action based on

unanswered calls to avoid serious constitutional questions of Article III standing.  Someone like

Plaintiff who ignored the call, or someone who is not home to hear the phone ring, obviously

lacks "an injury in fact that is . . . concrete and particularized," *Friends of the Earth*, 528 U.S. at

180, which is the "irreducible constitutional minimum" for standing, *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560-61 (1992).  Such a plaintiff's claim to standing would have to rest on

the notion that the plaintiff's *statutory* rights were violated and that the plaintiff can seek

*statutory* damages notwithstanding the lack of *actual* damages.

     That, however, is a constitutionally dubious proposition that is the subject of a circuit

split.  The Supreme Court has held that "Congress cannot erase Article III's standing

requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have

standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).  Accordingly, some circuits have

rejected the argument that, in the absence of concrete injury, the mere "deprivation of [a] statutory right . . . is sufficient to constitute an injury-in-fact for Article III standing." *David v. Alphin*, 704 F.3d 327, 338-39 (4th Cir. 2013); *accord Consumer Watchdog v. Wis. Alumni Research Found.*, 753 F.3d 1258, 1262 (Fed. Cir. 2014) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute. *That principle, however, does not simply override the requirement of injury in fact*."). Other circuits, including the Tenth Circuit, have held that "the 'injury in fact' analysis for purposes of Article III is directly linked to the question of whether [a plaintiff] has suffered a cognizable statutory injury . . . . [when a statute] permits the recovery of statutory damages." *Robey v. Shapiro, Marianos & Cejda LLC*, 434 F.3d 1208, 1212 (10th Cir. 2006).

The Supreme Court twice appears to have recognized that this constitutional question is both serious and unsettled. In 2011, the Supreme Court granted *certiorari* on the question of whether a plaintiff "ha[s] standing to sue under Article III" based on the violation of a federal statute "in the absence of any claim that the . . . violation [economically impacted the plaintiff]." Pet. for Writ of Cert. in *First Am. Fin. Corp. v. Edwards*, S. Ct. No. 10-708, at i, *available at* 2010 WL 4876485; *see also* Order Granting Writ of Cert., 131 S. Ct. 3022 (2011). The Court later dismissed the petition. *See* 132 S. Ct. 2536 (2012). Currently, the Supreme Court has pending before it another *certiorari* petition presenting the question of "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." Pet. for Writ of Cert. in *Spokeo, Inc. v. Robins*, S. Ct. No. 13-1339, at i, *available at* 2014 WL 1802228. Although the Supreme Court

19

has not yet acted on the petition, it recently invited "[t]he Solicitor General . . . to file a brief in this case expressing the views of the United States." 135 S. Ct. 323 (2014).

The issue here, of course, is not what the *right answer* to this constitutional question is, or whether Plaintiff has Article III standing in this case. The issue here is how to "choos[e] between competing plausible interpretations of a statutory text" – and it is clear that construing the TCPA to confer a right of action based on calls that do not cause any real harm would raise constitutional "doubt" that Congress presumptively "did not intend." *Clark*, 543 U.S. at 381. The Court therefore should construe the TCPA not to confer a right of action for calls that merely ring through with no one leaving a message – a construction that is, in any event, compelled by the language, structure, and history of the TCPA and its implementing regulation.

Because Plaintiff does not and cannot allege two actionable calls as required by the TCPA, his claims under all three subsections of § 64.1200 should be dismissed with prejudice.

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's Complaint should be dismissed with prejudice.

December 23, 2014

 /s/ James C. Rutten
James C. Rutten

MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
(213) 683-9100; (213) 687-3702 (fax)
james.rutten@mto.com
varun.behl@mto.com

GARLIN DRISOLL LLC
245 Century Circle, Suite 101
Louisville, Colorado  80027
(303) 926-4222; (720) 550-5816 (fax)
ddriscoll@garlindriscoll.com
jpalmer@garlindriscoll.com

*Attorneys for Defendant Dex Media, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of December, 2014, I electronically filed the foregoing **MOTION TO DISMISS AND/OR STRIKE PURSUANT TO FRCP 12(B)(6) AND 12(F)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Steven L. Woodrow
Megan Lindsey
EDELSON PC
999 West 18th Street, Suite 3000
Denver, CO 80202
Tel: 303.357.4878
Fax: 303.446.9111
swoodrow@edelson.com
mlindsey@edelson.com

Rafey S. Balabanian
Benjamin H. Richman
Eve Lynn Rapp
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378
rbalabanian@edelson.com
brichman@edelson.com
erapp@edelson.com

Stefan L. Coleman
LAW OFFICES OF STEFAN COLEMAN, LLC
201 S Biscayne Blvd, 28th Floor
Miami, FL 33131
Tel: 877.333.9427
Fax: 888.498.8946
law@stefancoleman.com

*/s/ Joel A. Palmer*
Joel A. Palmer
GARLIN DRISCOLL LLC
245 Century Circle, Suite 101
Louisville, CO 80027
Tel: (303) 926-4222
Fax: (303) 926-4224
jpalmer@garlindriscoll.com