**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03063-RM-NYW

STEPHEN DIERKS, individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

DEX MEDIA, INC., a Delaware corporation,

      Defendant.

---

## SCHEDULING ORDER

---

## 1.  DATE OF CONFERENCE AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The scheduling conference in this action was held on March 26, 2015 at 3:00 p.m. before

Magistrate Judge Nina Y. Wang in Courtroom C-205 of the Alfred A. Arraj United States

Courthouse, 901 19th Street, Denver Colorado.

**Plaintiff Stephen Dierks ("Plaintiff") is represented by:**

**EDELSON PC**

Rafey S. Balabanian
rbalabanian@edelson.com
Benjamin H. Richman
brichman@edelson.com
Eve-Lynn J. Rapp
erapp@edelson.com
350 North LaSalle Street Suite 1300
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

**Defendant Dex Media, Inc. ("Dex Media" or "Defendant") is represented by**:

MUNGER, TOLLES & OLSON LLP

James C. Rutten
james.rutten@mto.com
Varun Behl
varun.behl@mto.com
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
Tel: 213.683.9100
Fax: 213.687.3702

and

GARLIN DRISCOLL LLC

David J. Driscoll
ddriscoll@garlindriscoll.com
Joel A. Palmer
jpalmer@garlindriscoll.com
245 Century Circle, Suite 101
Louisville, Colorado  80027
Tel: 303.926.4222
Fax: 303.926.4224

## 2. STATEMENT OF JURISDICTION

Plaintiff alleges that the Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331 because this action arises under the Telephone Consumer

Protection Act, 47 U.S.C. § 227 ("TCPA"), which is a federal statute.

## 3. STATEMENT OF CLAIMS AND DEFENSES

**Plaintiff's Statement:** This is a nationwide putative class action in which Plaintiff

alleges that Defendant—the operator of various online business directory websites such as

Superpages.com and Dexpages.com—made telephone solicitation calls to consumers whose

landline and cellular telephone numbers are registered on the National Do Not Call Registry and

without adhering to the "minimum standards" required of telemarketers, in violation of the

Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations 47

C.F.R. § 64.1200(c), (d). (Dkt. 1.).

Specifically, Congress enacted the TCPA after determining that "unrestricted

telemarketing…can be an intrusive invasion of privacy," and that "[m]any consumers [we]re

outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." *Mims*

*v. Arrow Fin. Svcs's, LLC*, 132 S. Ct. 740, 744 (2012). Pursuant to Congress's directive, the

FCC then implemented various regulations to address these privacy concerns. Specifically, and

relevant to the instant matter, Section 64.1200(c) provides that: "No person or entity shall

initiate any telephone solicitation to… [a] residential telephone subscriber who has registered his

or her telephone number on the national do-not-call registry of persons who do not wish to

receive telephone solicitations that is maintained by the federal government." *See* 47 C.F.R. §

64.1200(c)(2). Likewise, Section 64.1200(d) states, "no person or entity shall initiate any call for

telemarketing purposes to a residential telephone subscriber unless [they have] instituted

procedures for maintaining a list of persons who request not to receive telemarketing calls." 47

C.F.R. § 64.1200(d). Relevant to the instant action, such procedures require calling entities to,

*inter alia*, (i) have a "written policy…for maintaining a do-not-call list," (ii) ensure that

individuals engaged in any aspect of telemarketing be "informed and trained in the existence and

use of the do-not-call list," and (4) provide "the name of the individual caller, the name of the

person or entity on whose behalf the call is being made, and a telephone number or address at

which the person or entity may be contacted." *See* 47 C.F.R. § 64.1200(d)(1), (2), and (4),

respectively.

3

Here, Plaintiff alleges that he received at least two telemarketing calls from Defendant that violated these regulations, as Defendant made calls to his residential landline despite his long-time enrollment on the National DNC Registry and the fact that he never consented to such calls or used his residential telephone number as a business line. (*Id.* ¶¶ 18-26.) Plaintiff brings a single cause of action under 47 U.S.C. 227(c)(5), which creates a private right of action for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation." 47 U.S.C. § 227(c)(5), and seeks to recover actual, as well as statutory damages in the amount of $500.00 per call (which may be trebled to the extent the Court finds that Defendant's conduct was willful and knowing). (*Id.*)

Contrary to Defendant's assertions, Plaintiff does not allege that Defendant's harassing telephone solicitations are a "mistake" or are in any way unique. Rather, and as addressed in Plaintiff's Opposition to Defendant's Motion to Dismiss  ("Plaintiff's Opposition") (Dkt. 37-1), Plaintiff alleges that—as part of its business model and in effort to increase profits—Defendant engages in a common practice of systematically: (i) purchasing contact information from third party-data brokers which it then uses to (ii) place materially identical marketing calls to individuals (iii) without adhering to the minimum procedures set forth by the FCC's regulations, and without (iv) taking any steps to ensure that the individuals it contacts have not registered their number on the DNC Registry. (*See e.g.*, Compl. ¶¶ 2, 13, 16, 17, 28, 29.) Moreover, as a result of these common practices, Plaintiff further alleges that both he and the members of the putative class suffered a common injury (*Id.* ¶¶ 6, 41, 42), making resolution of the claims on a class wide basis entirely appropriate.

Defendant's claim that it cannot be held liable for the phone calls at issue because it maintained "reasonable practices and procedures to effectively prevent telephone solicitations," is not supported by any evidence in the record. For example, Defendant does not claim that it takes any independent steps to scrub the numbers it contacts against the numbers on the National DNC Registry—a procedure that it could comply with at minimal cost. But even if it did, it would not be appropriate to address such an affirmative defense at this time. And, in any event, whether Defendant's uniform calling practices were "reasonable" is a question that is common to the class and would not prevent this case from proceeding as a class action.

**Defendant's Statement:** Dex Media is the nation's premier publisher of Yellow Pages print and online business directory listings.  Its clients are the businesses that advertise in its publications, not individual consumers.  Accordingly, when Dex Media or an affiliate telephones potential or existing clients to market new or upgraded advertising to them, it necessarily calls businesses, not households.

Plaintiff alleges that a mistake was made in his case.  He alleges that Dex Media twice called his home to try to sell him advertising in the mistaken belief that it was calling a psychologist's office.  He admits that he did not answer either call.  He could have ignored these calls, or he could have informed Dex Media that he was not running a psychology practice. Instead, he filed this lawsuit under the TCPA, which prohibits certain telemarketing calls to residential telephone subscribers – but does *not* prohibit calls to business subscribers.  Plaintiff seeks damages for the "harm" and "aggravation" he claims to have suffered, and, of course, to represent a *nationwide class* of others he speculates "[o]n information and belief" might be similarly situated.  (Compl. (Dkt. #1) at ¶¶ 6, 27.)  As Plaintiff well knows, however, the

telephone lines that Dex Media calls are not classified as business or residential by Dex Media or by what Plaintiff calls "third-party data brokers"; the lines are classified by the phone companies themselves, it is the phone companies that provide the classifications to Dex Media, and in Plaintiff's case his own phone company classified the line it provided to him in part as a business line.  Unsurprisingly, therefore, Plaintiff does not allege facts suggesting that Dex Media *ever* called *any* household other than his own.

Plaintiff cannot establish liability on the part of Dex Media even to himself, much less to a purported class.  His individual claim fails *as a matter of law* and should be dismissed at the pleading stage for the reasons stated in Dex Media's pending motion to dismiss (Dkt. #20).  His claim also fails for numerous additional reasons, including that the TCPA does not create liability for simple misdirected phone calls; it provides that there can be no liability where the defendant maintained "reasonable practices and procedures to effectively prevent telephone solicitations in violation of the [statute's implementing] regulations" – such as getting phone line classifications straight from the horse's mouth, namely, the phone companies that provide the lines.  47 U.S.C. § 227(c)(5)(C).  And Plaintiff has not alleged, and certainly cannot establish, the prerequisites to class certification or that a class even *exists* – particularly given that Dex Media has no business practice of placing telemarketing calls to residences as opposed to businesses, and indeed, has no reason to place such calls.

### 4. UNDISPUTED FACTS

The Parties have made a good faith attempt to determine whether there are any material facts that are not in dispute.  The Parties state that the following material facts are not disputed:

1.      Plaintiff is a natural person.

2.      Defendant is a corporation existing under the laws of the State of Delaware with its principal place of business located at 2200 West Airfield Drive, DFW Airport, Texas 75261.

3.      The two telephone calls Plaintiff alleges occurred within a 12-month period of each other.

### 5. COMPUTATION OF DAMAGES

**Plaintiff's Statement:** Plaintiff seeks actual, as well as statutory damages in the amount of $500.00 per call for Defendant's violations of Section 64.1200(c) and (d) pursuant to 47 U.S.C. § 227(c)(5), and 1500.00 per call to the extent the Court finds that Defendant's conduct is willful and knowing.

**Defendant's Statement:** Dex Media denies that Plaintiff is entitled to any damages or any relief whatsoever.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

   A.      **Date of Rule 26(f) meeting:**

The Parties have telephonically met and conferred about their respective views on this case on numerous occasions, including but not limited to January 8, January 20, February 16, and March 3, 2015.

   B.      **Names of each participant and party he/she represented**:

During the Parties' telephonic conferences, Plaintiff was represented by Benjamin H. Richman and/or Eve-Lynn J. Rapp of Edelson PC and Defendant was represented by James C. Rutten of Munger Tolles & Olson LLP.

**C.      Statement as to when Rule 26(a)(1) disclosures were made or will be made:**

The Court's November 11, 2014 Order Setting Rule 16(b) Scheduling Conference and

Rule 26(f) Planning Meeting (the "Initial Scheduling Order") (Dkt. 7) set March 19, 2015 as the

date for initial disclosures.  As set forth below, the parties disagree on whether substantive

discovery in the case should await a ruling on Dex Media's pending motion to dismiss.  Neither

party objects, however, to providing the limited information required by Rule 26(a)(1) by the

deadline set by the Court.

**D.      Proposed changes, if any, in timing or requirement of disclosures under**
**Fed. R. Civ. P. 26(a)(1):**

The Parties do not propose any changes to the timing requirement of disclosures as set

forth in the Court's Initial Scheduling Order.

**E.      Statement concerning any agreements to conduct informal discovery:**

In order to facilitate their meet-and-confer discussions, the Parties have already

informally exchanged information regarding their respective claims and defenses, and anticipate

continuing to do so as appropriate.

**F.      Statement concerning any other agreements or procedures to reduce**
**discovery and other litigation costs, including the use of a unified exhibit**
**numbering system:**

The Parties agree to make good-faith attempts to reduce discovery and litigation costs,

and to use a unified exhibit numbering system as necessary.  The Parties further agree to

continue to attempt to simplify the issues in the case in good faith as this action progresses.

**G.     Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form:**

**<u>Plaintiff's Statement:</u>** Plaintiff anticipates that discovery of electronically stored information ("ESI") will be necessary in this case. Such information will include, but is not necessarily limited to: (1) the total number and identity of individuals to whom Defendant and/or its agents made the unauthorized calls at issue; (2) the total number of calls Defendant and/or its agents made to those individuals; (3) the methods by which Defendant and/or its agents obtained the telephone numbers called; (4) the equipment Defendant and/or its agents used to make the calls; (5) records of call recipients' consent to receive the calls (if any); (6) records of individuals' request(s) that Defendant and/or its agents cease making such calls; (7) policies and/or procedures maintained by Defendant and/or its agents related to complying with the TPCA and its do-not-call requirements; (8) contracts exchanged between Defendant and its agents related to obtaining the telephone numbers called and making the calls; (9) communications between Defendant and its agents related to obtaining the telephone numbers called and making the calls, and (10) the content of the calls.

To facilitate production, Plaintiff submits that the Parties should discuss an appropriate ESI protocol and craft an appropriate stipulation, governing: (i) the identification of relevant and discoverable ESI; (ii) the scope of discoverable ESI to be preserved and produced; (iii) the formats for preservation and production of ESI; (iv) the protection of confidential and proprietary information; (v) the procedures for handling inadvertent production of privileged

information and other privilege waiver issues under Rule 502 of the Federal Rules of Evidence; and (vi) any other relevant ESI issues that may arise.

Plaintiff has taken steps to preserve evidence of the telephone calls at issue in this case, including but not limited to, images of his Caller ID identifying the calls received from Defendant, and has preserved evidence of his enrollment on the National Do Not Call Registry at the time of Defendant's calls.

**Defendant's Statement:** Dex Media agrees that if this case proceeds past the pleading stage, discovery is likely to involve ESI, and that a stipulated ESI protocol and confidentiality protective order would be appropriate.  Dex Media does not agree that all the categories of information Plaintiff lists above are appropriate subjects of discovery in this case.

**H.** **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case:**

The Parties have conferred in good faith on several occasions about their respective views of the case in the hopes of narrowing the issues and potentially reaching an early resolution.

## 7. CONSENT

All parties do not consent to the exercise of jurisdiction of the magistrate judge at this time.

## 8. DISCOVERY LIMITATIONS

**Plaintiff's Statement**: Plaintiff proposes that the Court increase the amount of interrogatories permitted to be served on another party to forty (40). Plaintiff does not propose any further changes to the discovery limitations prescribed in the Federal or Local Rules, but

respectfully reserves the right to seek appropriate modifications as necessary following the District Court's rulings on Defendant's Motions to Dismiss and/or Strike Pursuant to FRCP 12(b)(6) and 12(f), and/or on any other significant motion from which additional discovery might be necessitated.

Plaintiff also submits that the Parties draft a proposed protective order governing the production and handling of privileged, confidential, proprietary, and otherwise sensitive discovery materials in this matter, for the Court's consideration.

**Defendant's Statement:** Dex Media believes that discovery should commence only once the Court resolves its pending motion to dismiss (Dkt. #20) and the pleadings are otherwise settled.  As Dex Media explains in its motion, Plaintiff's individual claims fail *as a matter of law*, and in any event, his 13-page Complaint consists largely of boilerplate and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Notably, his Complaint does not contain any plausible allegations of fact to support his abject speculation "[o]n information and belief" (Compl. (Dkt. #1) at ¶¶ 6, 27), that Dex Media has a pattern and practice of placing telemarketing calls to households *despite having no reason to do so*, and despite receiving telephone line classifications (*e.g.*, business, residential) from the phone companies that provide those lines.  His Complaint thus typifies "the practice of many lawyers almost Pavlovian in its character of inserting class action allegations in their complaint" without supporting facts. *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1311 (4th Cir. 1978).

Plaintiff, however, must make bona fide allegations of fact *before* subjecting Dex Media to the burdensome and expensive discovery program that, judging from his writeup above, he

obviously is envisioning: "The very purpose of the notice pleading requirement is to permit the court to determine at the outset of the litigation, *before* costly discovery is undertaken, whether the plaintiff has any tenable theory or basis of suit, so that if he does not the case can be got rid of immediately without clogging the court's docket and imposing *needless expense on the defendant*." *Ryan v. Mary Immaculate Queen Ctr.*, 188 F.3d 857, 860 (7th Cir. 1999) (emphasis added); *accord Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("To allow such a complaint to proceed would impose the cost of discovery on the defendants for no plausible basis."). He is not permitted to sue first and ask questions later, nor is he permitted to file a lawsuit in search of a class. Accordingly, discovery should commence only if the Court rules that he has stated a viable claim. As Plaintiff acknowledges below, "the Court has discretion to stay discovery while a potentially dispositive motion is pending," and such stays are routinely entered in this District. *See, e.g.*, *Benton v. Town of South Fork & Police Dept.*, 553 F. App'x 772, 778 (10th Cir. 2014) (affirming a "stay [of] the proceedings pending [the court's] determination of the motions to dismiss"); *Samuels v. Baldwin*, 2015 WL 232121, at *4 (D. Colo. Jan. 16, 2015) ("[T]he Court concludes that staying discovery pending resolution of Defendants' Motion to Dismiss . . . is appropriate."); *String Cheese Incident LLC v. Stylus Shows, Inc.*, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006) ("I find that a thirty day stay to allow for the potential of a ruling on the motion to dismiss will not unduly prejudice either side.").

Dex Media has undertaken efforts to preserve all relevant documents, so there is no prejudice from deferring discovery at this juncture.

Dex Media does not agree that, if the case goes forward, the number of permitted interrogatories automatically should be increased to 40.  Plaintiff offers no justification for that request.  Dex Media is committed to working with Plaintiff in good faith, and if the case proceeds and it becomes clear that more than 25 interrogatories are warranted for some reason, Dex Media would be pleased to discuss the matter with Plaintiff at that point.

As noted above, if this case proceeds past the pleading stage, Dex Media agrees with Plaintiff that a stipulated ESI protocol and confidentiality protective order would be appropriate.

### 9. CASE PLAN AND SCHEDULE

**A.      Deadline for Joinder of Parties and Amendment of Pleadings:**

The Parties agree that the deadline to join additional parties and/or amend the pleadings should be June 19, 2015, or such other date as the Court may set in connection with ruling on challenges to the pleadings.

**B.      Proposed Discovery and Scheduling Deadlines:**

**<u>Plaintiff's Statement</u>:** Plaintiff proposes that both class and merits discovery commence immediately following the March 26, 2015 Rule16(f) Conference, as permitted under the Federal Rules, and in accordance with the scheduling deadlines proposed below. Allowing formal discovery to proceed now, and as to the case as a whole will (i) allow discovery to be completed in the most expeditious manner possible, (ii) avoid the need to serve and respond to multiple sets of written requests, as well as the need to prepare for and take multiple depositions of (likely) many of the same witnesses, (iii) avoid multiple phases of discovery motion practice (if any), and (iv) otherwise move the case forward efficiently.

Although the Court has discretion to stay discovery while a potentially dispositive motion

is pending, as Defendant suggests, such stays are strongly disfavored in this District. *See e.g.*, *Profitstreams LLC v. Ameranth, Inc.*, No. 11-CV-01710-RBJ-KLM, 2011 WL 5024912, at *1 (D. Colo. Oct. 21, 2011) (finding that stay of discovery pending a ruling on the motion to dismiss would be "inappropriate") (citing *Wason Ranch Corp. v. Hecla Mining Co.*, No. CIV.A. 07-CV00267EWN, 2007 WL 1655362, at *2 (D. Colo. June 6, 2007)) (same); *Jordan v. Wiley*, No. CIVA 07CV00498MSKKLM, 2008 WL 4861923, at *1 (D. Colo. Nov. 10, 2008) (holding that it "generally is the policy in this district not to stay discovery unless a defense of qualified immunity has been raised in a pending motion to dismiss."). Moreover, as addressed in greater detail in Plaintiff's Opposition, it would be improper for the Court to strike Plaintiff's class allegations without allowing discovery to proceed, unless Defendant can show that certification would be "impossible" from the face of the Complaint. *Francis v. Mead Johnson & Co.*, No. 10-cv-00701, 2010 WL 3733023, at *1 (D. Colo. Sept. 10, 2010).

As such, Plaintiff's proposed scheduling and discovery deadlines are as follows:

| EVENT | PLAINTIFF'S PROPOSED DEADLINE |
|---|---|
| *Deadline to Exchange Rule 26(a)(1) Initial Disclosures* | March 19, 2015 |
| *Deadline to Amend Pleadings and Add Parties Without Leave of Court* | June 19, 2015 or such other date as the Court may set in connection with ruling on challenges to the pleadings |
| *Deadline to serve interrogatories, requests for admission, and requests for the production of documents* | October 15, 2015 |
| *Deadline to Complete Fact Discovery (Both Class and Merits)* | December 28, 2015 |

| | |
|---|---|
| *Plaintiff's Deadline to Disclose Expert Witnesses Relating to Class Certification* | January 28, 2016 |
| *Defendant's Deadline to Disclose Rebuttal Expert Witnesses Relating to Class Certification* | February 29, 2016 |
| *Deadline for Completion of Expert Discovery Relating to Class Certification* | March 14, 2016 |
| *Plaintiff's Deadline to File Motion for Class Certification* | April 14, 2016 |
| *Defendant's Deadline to File Opposition to Motion for Class Certification* | June 6, 2016 |
| *Plaintiff's Deadline to File Reply in Support of Motion for Class Certification* | June 20, 2016 |
| *Plaintiff's Deadline to Disclose Expert Witnesses Relating to Merits Issues* | Four (4) weeks following the Court's Order on class certification |
| *Defendant's Deadline to Disclose Rebuttal Expert Witnesses Relating to Merits Issues* | Eight (8) weeks following the Court's Order on class certification |
| *Deadline to Complete Expert Discovery Relating to Merits Issues* | Twelve (12) weeks following the Court's Order on class certification |
| *Deadline to File Dispositive Motions* | Fourteen (14) weeks following the Court's Order on class certification |
| *Deadline for Filing Joint Pretrial Order and Fed. R. Civ. P. 26(a)(3) Disclosures* | TBD |
| *Pretrial Conference* | TBD |
| *Motion in Limine Hearing Date* | TBD |
| *Trial to Begin* | TBD |

15

Alternatively, to the extent the Court agrees with Defendant's below proposal that discovery be stayed until a ruling on the Motion to Dismiss, Plaintiff proposes that the Court allow for a class-discovery period of at least five (5) months, with Plaintiff's deadline to file his certification motion thirty (30) days after the close of class discovery, Defendant's deadline to respond set for four (4) weeks thereafter, and Plaintiff's deadline to reply set for three (3) weeks after that.

The Parties could then meet and confer regarding the appropriate dates for completion of the remaining merits and expert discovery, as well as regarding the deadlines for any dispositive motions, expert disclosures and trial, and provide a joint proposed scheduling order to the Court. Finally, as Defendant has confirmed that it is not suggesting that discovery be bifurcated, under this scenario, merits an class discovery would begin at the same time, and merits discovery would continue during briefing on the certification issues, and until the deadline ultimately set by the Court.

**Defendant's Position:** Dex Media's proposed schedule below is generally consistent with Plaintiff's proposed schedule, while differing in the following respects:

*First*, consistent with Dex Media's view that discovery should commence only if the Court determines that the case will proceed, Dex Media proposes floating dates instead of dates certain. If Dex Media's pending motion to dismiss is denied, then filling in the schedule with dates certain will be a simple mechanical task.

*Second*, Dex Media believes that Plaintiff's proposed deadline for filing his class certification motion – after all fact discovery is completed, after a round of expert reports, and

after a round of expert depositions – is inimical to FRCP 23's command that "the court *must* determine by order whether to certify the action as a class action" at "an *early* practicable time." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added); *accord Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S. Ct. 1184, 1201 (observing that Rule 23 "instructs that the decision whether to certify a class action be made at an early practicable time" so as to avoid "considerable expenditures of judicial time and resources") (internal quotation marks, citation, and brackets omitted); *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1141 (10th Cir. 2009) ("It may have been more prudent for the district court to decide the class certification issue earlier in the litigation.").

This case is either a class action or a two-party triviality about two unanswered phone calls. Determining which it is going to be at an *early* juncture is thus essential for a variety of reasons. That is why the local rules of many courts require a class certification motion to be filed within 90 days of the filing of the complaint. *See Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1244 (10th Cir. 2011) (citing examples of local rules). In this case, Dex Media proposes that the motion be filed within four months of the start of discovery, which should give Plaintiff ample time to take whatever discovery he needs to support his motion, while simultaneously taking non-class discovery if he chooses to do so.

*Third*, Dex Media believes that Plaintiff's proposal for two entirely separate rounds of expert witness disclosures and depositions – one in advance of the class certification motion on class certification issues, and another later on merits issues – is unnecessary and will only create delay. In Dex Media's counsel's experience, parties typically submit expert reports on class

certification issues simultaneously with the class certification briefing.  Dex Media sees no reason to engender delay by departing from that standard practice here.

*Fourth*, given that Dex Media proposes to start discovery only if it is determined that the case will proceed, Dex Media generally proposes shorter periods for most activities so that the overall case schedule will not be unduly long.  Indeed, under Dex Media's proposed schedule, if the case proceeds, it is likely to get to trial *sooner* than under Plaintiff's proposed schedule.

Based on the foregoing, Dex Media proposes the following schedule:

| EVENT | DEX MEDIA'S PROPOSED DEADLINE |
|---|---|
| *Deadline to Exchange Rule 26(a)(1) Initial Disclosures* | March 19, 2015 |
| *Deadline to Amend Pleadings and Add Parties Without Leave of Court* | June 19, 2015 or such other date as the Court may set in connection with ruling on challenges to the pleadings |
| *Start of Discovery* | Immediately upon filing of answer |
| *Plaintiff's Deadline to File Motion for Class Certification (with supporting expert reports)* | Four (4) months after start of discovery (opposition papers due four weeks thereafter, and reply papers two weeks thereafter) |
| *Deadline to Complete Fact Discovery* | Seven (7) months after start of discovery |
| *Plaintiff's Deadline to Disclose Expert Witnesses Relating to Merits Issues* | Two (2) weeks after a ruling on class certification or the close of fact discovery, whichever is later |
| *Defendant's Deadline to Disclose Expert Witnesses Relating to Merits Issues* | Five (5) weeks after Plaintiff's disclosure of expert witnesses |
| *Deadline to Complete Expert Depositions* | Four (4) weeks after Defendant's disclosure of expert witnesses |
| *Deadline to File Dispositive Motions* | Two (2) weeks after close of expert discovery |

| | |
|---|---|
| *Deadline for Filing Joint Pretrial Order and Fed. R. Civ. P. 26(a)(3) Disclosures* | TBD |
| *Pretrial Conference* | TBD |
| *Motion in Limine Hearing Date* | TBD |
| *Trial to Begin* | TBD |

### C.     Expert Witness Disclosure:

The Parties have not yet determined whether calling expert witnesses will be necessary, but reserve the right to do so.  To the extent experts are necessary, the Parties will designate all experts, provide reports from retained experts pursuant to FRCP 26(a)(2), and complete expert depositions, in accordance with the schedule adopted by the Court.

### D.     Identification of Persons to Be Deposed:

Plaintiff intends to depose all appropriate FRCP 30(b)(6) designee(s) of Defendant, as well as any other necessary officers and employees of Defendant, and appropriate third parties identified through discovery.  Defendant intends to depose Plaintiff, as well as appropriate third parties.

## 10. DATES FOR FURTHER CONFERENCES

**A.**     **Status conferences will be held in this case at the following dates and times:**

_____.

**B.**     **A final pretrial conference will be held in this case on _____at o'clock _____m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.**

## 11. OTHER SCHEDULING MATTERS

**A.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement:**

Other than those noted above, the Parties are not aware of any additional discovery or scheduling issues upon which they were unable to reach agreement.

**B.      Anticipated length of trial and whether trial is to the court or jury:**

The Parties anticipate that should a class be certified, a jury trial will require approximately five to seven court days.  Dex Media reserves its right to move to strike Plaintiff's jury demand.

**C.      Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, 103 Sheppard Drive, Durango, Colorado 81303-3439:**

At this time, the Parties are not aware of any pretrial proceedings that may be more efficiently conducted in the Court's other facilities.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(d) by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this _____ day of _____, 2015.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED BY:

/s/ Eve-Lynn J. Rapp

EDELSON PC
Rafey S. Balabanian
Benjamin H. Richman
Eve-Lynn J. Rapp
350 North LaSalle Street, Suite 1300
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378
rbalabanian@edelson.com
brichman@edelson.com
erapp@edelson.com

*Attorneys for Plaintiff Stephen Dierks, on behalf of himself and all others similarly situated*

/s/ James C. Rutten

MUNGER, TOLLES & OLSON LLP
James C. Rutten
Varun Behl
355 South Grand Avenue, 35th Floor
Los Angeles, California  90071-1560
Tel: (213) 683-9100
Fax: (213) 687-3702
james.rutten@mto.com
varun.behl@mto.com

*Attorneys for Defendant Dex Media, Inc.*